Richards v. Pallito, No. 514-8-11 Rdcv (Teachout, J., Jan. 31, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

### STATE OF VERMONT

**SUPERIOR COURT**  **CIVIL DIVISION**
**Rutland Unit**  **Docket No. 514-8-11Rdcv**


**CHRISTOPHER RICHARDS,**
    **Petitioner**


    **v.**

**ANDREW PALLITO, Commissioner,**
**Vermont Department of Corrections,**
    **Respondent**


### DECISION

This matter came before the Court for hearing on January 4, 2012, on Petitioner's request for Rule 75 Review of Governmental Action. Petitioner seeks review of a disciplinary violation for an incident that occurred on June 27, 2011 while he was at Marble Valley Regional Correctional Facility on pretrial detention, and for which he was found guilty by the hearing officer. The determination was appealed to the superintendent of the facility and upheld. Petitioner has properly exhausted administrative procedures.

Petitioner Christopher Richards was present and represented himself at the hearing before this Court. The Commissioner was represented by Attorney Emily A. Carr. After the hearing, Attorney Carr submitted a letter with attachments. The information contained in the filing appeared to provide additional information on a contested issue in the case. A trial court does have discretion to allow additional evidence after a hearing for good cause; however, where there is no good reason that the proffered evidence could not have been introduced at trial, it is not an abuse of discretion for the court to refuse to admit the evidence submitted after the trial. See *Gazo v. Gazo*, 166 Vt. 434, 447 (1997). Obviously, when documents are submitted after trial, there is no witness testimony to identify or support the documents, and no opportunity for cross-examination, which is fundamental to the integrity of due process in all trials. Mr. Richards has had no opportunity to address the contents of the post-hearing filing. Therefore, the Court has not read the post-hearing filing. The hearing ended at the close of evidence on January 4, 2012, and the decision below is based on the state of the record as of that date.

Mr. Richards was a pretrial detainee at the Marble Valley Regional Correctional Facility when he was charged with a Major AO1E, which is an "Assault, physically attacking another person with or without the use of an object or substance." At the hearing, he was found not guilty of the charge, but guilty of the lesser charge of B05D, which is "fighting where serious bodily injury was not carried out." There is also a

1

possible B-level assault charge, B05A "assault," of which he was not charged or found guilty. However, B05A (assault) and B05D (fighting) have the same possible penalties, which is 0-15 days of segregation time. He was given the maximum of 15 days of segregation for the fighting conviction.

Petitioner claims two grounds for review. First, he argues that he was not fighting but only protecting himself from an unprovoked attack from another, Inmate Fredette, and he argues that there is not enough evidence to support a violation of fighting. Second, he argues that his conviction was for fighting, but that he was treated by the Marble Valley Regional Correctional Facility and the Department of Corrections as if he were convicted of an A-level assault, and that the Department's records reflect a conviction for assault even though there was no such conviction.

Facts contained in the information before the Hearing Officer stated that Inmate Fredette and Petitioner were involved in some kind of altercation in the prison yard. Corrections officers responding saw Fredette hit Petitioner but did not see Petitioner hit Fredette. Fredette accused Petitioner of attacking him first. Fredette had a seriously injured finger and was taken for treatment. Petitioner did not immediately respond to commands to put his hands behind his back in the cuff position. Petitioner maintained from the beginning and consistently throughout the hearing that Fredette had attacked him without reason, and that he was only defending himself from the attack. He claimed that when told to put his hands behind his back, he was looking around for his glasses, which had fallen to the ground. Petitioner was charged with an A-level assault, A01E.

At the disciplinary hearing, Fredette changed his story and said that he himself (Fredette) had initiated the incident. Hearing Officer Corey Hoague did not find Petitioner guilty of an assault, as there was no witness who had seen him assault Fredette, but he found Petitioner guilty of fighting (B05D) and gave him 15 days of segregation time, citing the fact that he was slow to respond to the command to be put in cuffs as the reason for the selection of the maximum penalty.

The role of this Court is to determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Herring v. Gorcyzk*, 173 Vt. 240, 243 (2001) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985)). An inmate accused of a disciplinary violation may not be punished unless his guilt is established before the hearing officer by a preponderance of the evidence. *LaFaso v. Patrissi*, 161 Vt. 46, 54 (1993). "On judicial review of the sufficiency of evidence at a prison disciplinary hearing, the hearing officer's final determination must be upheld if it is supported by 'some evidence' in the record." *Herring*, 173 Vt. at 243 (quoting *Hill*, 472 U.S. at 455). It is not the role of this Court upon a Rule 75 review to substitute its judgment for that of the hearing officer.

Hearing Officer Hoague had 'some evidence' for his determination. One witness saw Fredette and Richards conversing in a casual manner one minute, and ten seconds later saw them "wrestling standing up," and reported that "both inmates threw punches displaying dangerous behavior. Inmate Richards threw a punch an did not connect. . ." At the hearing, Richards admitted throwing punches, although he claims it was in self

2

defense. Furthermore, Inmate Fredette initially accused Richards of starting the altercation, despite the fact that he later changed his account. Although the evidence was not conclusive one way or another on the issue of whether Richards initiated aggressive action, there was evidence to reasonably lead a fair person to the conclusion that Mr. Richards was fighting and therefore to make a finding of a B05D violation for fighting.

There is also no error in the imposition of 15 days of segregation, as it was within the discretion of the hearing officer, upon finding a violation for a B05D, to impose any punishment within the authorized range, which included 15 days. This Court will not second-guess that decision. Therefore, Petitioner's first claim for review is not supported upon judicial review, and he is not entitled to expungement of the violation for fighting or the sentence.

His second reason for seeking review does have merit, however. He claims that even though his conviction was for fighting and not assault, he was treated as having committed an assault, and will be in the future under current DOC records. The Court finds credible Mr. Richards's testimony that he was told at the Marble Valley Regional Correctional Facility that he had been convicted of an assault and that he was punished for an assault. A result of his conviction was that he was put in closed custody status. Although there is no evidence that the status decision was based on the decision-maker's understanding of an assault conviction, it is not usual for a detainee with his criminal charge plus a DR for fighting to be placed in closed custody status, whereas that would not be unusual in the case of a DR for assault.

To some extent, the consequences are over, in that he has completed the 15 days of segregation. On the other hand, to the extent his record shows a Disciplinary Report conviction for assault, this could have future effect, as his disciplinary record is a point of reference in determining consequences with respect to future status. Specifically, an A-level assault conviction would have much more serious consequences on any future classification decisions than a B-level fighting DR conviction.

The Disciplinary Report History for Mr. Richards (Defendant's Exhibit C) shows on its face an infraction on 6/27/11 for an A01E, "Assault on another person." It is true that under the "Outcome" column, the abbreviation "Modfd" appears, and that it is possible to click on "Details" and learn that although A01E was the initial charge, the final disposition is for a B05D, "Fighting." The Department argues that this is accurate and does not prejudice Petitioner in that the ultimate modified conviction for fighting is in this record.

However, credible evidence also established that this is not the normal appearance of a record when a final disciplinary finding is for a charge other than the one originally charged. The normal practice is that the Disciplinary Report History would show on its face a B05D (for "Fighting") with an asterisk next to it to indicate that the conviction was based on a modified charge and not the original one. That way the face sheet is accurate as to the level of the actual conviction, and it is not necessary for a person reading the report to pursue another level of detail before getting to the right level of accuracy. The

3

evidence at the Court hearing on January 4, 2012 showed that although the conviction was on July 5, 2011, six months later the Department's record was not displaying accurate information in the manner that it should. There is a high likelihood that this record would be interpreted wrongly in the future and in a manner against Mr. Richards.

Accurately recording the outcome of disciplinary proceedings is not an act about which the Commissioner has discretion. It is a simple and definite ministerial duty. Rule 75 review is available "so long as review would have been available under any one of the extraordinary writs, such as mandamus, scire facias, prohibition, quo warranto, and certiorari." *Vt. State Emps.' Ass'n v. Vt. Criminal Justice Training Council,* 167 Vt. 191, 195 (1997). "Generally, the purpose of mandamus is to require a public officer to perform a simple and definite ministerial duty imposed by law." *Id.*

Petitioner has shown that he is entitled to an order from this Court requiring the Department of Corrections to correct its record of disciplinary action for Mr. Richards so that the Disciplinary Report History shows, on its face, an infraction for B05D for "Fighting" rather than an A01E for "Assault on another person."

The Court will schedule a continued hearing in March of 2012 to give the Department the opportunity to show that it has made the necessary change to its records.


Dated this 31st day of January, 2012.


_____
Hon. Mary Miles Teachout
Superior Judge

4